THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

T. H. and R. B., MINORS,
by and through their mother and next of kin,
MARIA ORTIZ BURCH and MARIA
ORTIZ BURCH, in her individual capacity,

                                         Plaintiffs,

vs.                                      Case No.: 3:25-cv-518-HTW-LGI

JUST WIRELESS, LLC; BEST CASE AND
ACCESSORIES, INC.; and FICTITIOUS
DEFENDANTS "1" THROUGH "10",

                                         Defendants.

## COMPLAINT

COME NOW Plaintiffs, T. H. and R. B., minors, by and through their mother, Maria Ortiz Burch as next of kin, and in her individual capacity ("Plaintiffs"), by and through undersigned counsel, and file this Complaint against the Defendants, Just Wireless, LLC; Best Case and Accessories, Inc.; and Fictitious Defendants 1-10, jointly and individually, and in support thereof would respectfully show unto the Court the following:

## PARTIES

1.      Plaintiffs are residents of Rankin County, Mississippi, and have been for a period of more than six (6) months next preceding the commencement of this action.

2.      Defendant, Just Wireless, LLC ("Just Wireless"), is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business at 159 Hillside Avenue, Williston Park, Nassau County, New York. At all relevant times, Just Wireless was engaged in the business of manufacturing and distributing cell phone chargers in the State of Mississippi and other states.

1

3.      Defendant, Best Case and Accessories, Inc. ("Best Case"), is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 140 58th Street 2-I, Brooklyn, Kings County, New York. At all relevant times, Best Cast was engaged in the business of manufacturing and distributing cell phone chargers in the State of Mississippi and other states.

4.      Fictitious Defendants "1 through 10" are those persons, corporations, other legal entities and/or successor-in-interest of any of entities, and/or successor-in-interest of any of those entities described above whose wrongful conduct caused or contributed to cause the harms, injuries and damages to the Plaintiffs. The true identity and facts giving rise to liability of the Fictitious Defendants are unknown to Plaintiffs at this time but will be substituted by amendment when ascertained. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein are negligently responsible and strictly liable in some manner for the events and happenings herein referred to, and caused injury and damages proximately thereby to the Plaintiffs as herein alleged.

## JURISDICTION AND VENUE

5.      This Court has venue of this action pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Mississippi.

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      This Court has specific personal jurisdiction over the Defendants under Mississippi's long-arm statute, Mississippi Code § 13-3-57 through purposefully establishing

minimum contacts with the State of Mississippi and due process is satisfied. *See Dilworth v. LG Chem, Ltd.*, 355 So.3d 201 (Miss. 2022). Defendants satisfied the requirements of § 13-3-57 by doing work in this state through the sale of products, such as the at-issue phone charger, and by delivering its product into the stream of commerce with the expectation that they would be purchased by consumers in Mississippi. Accordingly, Defendants purposefully availed themselves of the forum state; the claims arise out of those contacts, *i.e.*, selling defective phone chargers; and jurisdiction is fair and reasonable.

8. Further, Mississippi Code § 15-1-65 Mississippi's "law on the period of limitation shall apply" because the "action has accrued in favor of [Plaintiffs], resident[s] of this state".

## STATEMENT OF FACTS AND ALLEGATIONS

9. On June 20, 2022, Maria Ortiz Burch ("Maria") purchased a Just Wireless JW Home Charge 2.4A W/Lightning Cable ("Subject Charger") from Walgreens in Pearl, Mississippi (Store #3918).

10. On July 17, 2022, around 2:00 A.M. (CST), T. H. (11 years old at the time) was asleep in his bed at home in Rankin County, Mississippi.

11. The Subject Charger was laying across his bed charging his iPhone SE.

12. The Subject Charger's cord overheated and caught fire, which ignited the mattress and bedding while T. H. was asleep. Both of T. H.'s lower legs were severely burned as he attempted to get out of his burning bed.

13. R. B., T. H.'s younger brother, was asleep in the same room and was awakened by the fire alarms that subsequently went off, his brother screaming, and the chaos that ensued when his parents rushed into the room to put out the fire on his brother's bed. R. B. suffered mental anguish and severe emotional damage from this incident, which occurred in what was supposed to

be the safest place in his life—his room, in his parents' home.

14.     The children's mother, Maria, was awakened by the fire alarms, and rushed to her children's bedroom to find T. H. and his bed on fire. She suffered mental anguish and severe emotional damage from this incident.

15.     T. H. was immediately rushed to the hospital where he was triaged, stabilized, diagnosed, and treated for his third- and fourth-degree burns.

16.     As a result, T. H. endured two surgeries, one to remove the plastic wiring that was burned into his skin, and the second to graph skin over the third- and fourth-degree burns.

17.     After he was released from the hospital, he endured lasting pain and suffering as his injuries and surgeries healed.

18.     Even after he returned to school, he was not able to participate in his seventh-grade football or basketball season.

19.     He suffered and will continue to suffer from the embarrassment and pain of the lasting visual scars and nerve damage on his legs.

20.     He suffered immediately and continues to suffer lasting mental anguish.  T. H. refuses to close his door while he sleeps or charge his phone by himself.  He also suffers flashbacks any time he visits a hospital or smells anything burning.

21.     The Defendants had actual and/or constructive knowledge that the Subject Charger was a dangerous product because of previous instances of the Subject Charger, or substantively similar products manufactured by Defendants, catching fire and causing injuries including:

   A.     A review left on Just Wireless' website for a product titled "4ft TPU Type-C to USB-A Cable – Black" from a user named "E.N.", which reads: "One day, however, I went to use it after not using it for a while and found the USB-C end melted into my carpet (which I assume comes with the risk of fire which thankfully did not occur) . . . ."

B. A United States Consumer Product Safety Commission report detailing an incident on 9/22/2014 from a Just Wireless charger (model sku 04264) which reads: "I was charging my cell phone with the cell phone charger and I heard a loud pop, sparks flew out, and it then started having smoke pour out of it. I unplugged it and it was extremely hot." This report also answers "Yes" to the question "Submitter has product?" because "[consumer wanted] to let them know about it." This report was sent to the manufacturer/importer/private labeler on 10/1/2014. This report's first publication date is 10/23/2014.

C. A United States Consumer Product Safety Commission report detailing an incident on 1/5/2016 from a Just Wireless "USB-Powered Mobile Phone Battery Charger for iP[hone]", in which the consumer's "20 year[] old daughter's phone charger cable over heated and melted. She was asleep when it happened and rolled onto the cable with her arm and was waken by the burn. Her arm was blistered." The report also answered "Yes" to the question "Submitter has product?" This report was sent to the manufacturer/importer/private labeler on 1/13/2016. This report's first publication date is 2/9/2016.

D. A United States Consumer Product Safety Commission report detailing an incident on 5/28/2019 where, while in the car, the consumer "tried to plug her phone in again, the cable, about a centimeter below the actual charging plug started getting really hot and smoking." The cord's cable sheath "melted, burning her thumb." This report was sent to the manufacturer/importer/private labeler on 6/21/2019. This report's first publication date is 7/9/2019.

E. A United States Consumer Product Safety Commission report detailing an incident on 2/5/2020 from a "JW white 4-port USB quick charge sku: 13400" where the charger, after 5 minutes of being plugged in, emitted a "thin trail of smoke" and the consumer "grabbed [the] cable and small yellow flame appeared. [The consumer] [p]ut it back down to smother flame." This report was sent to the manufacturer/importer/private labeler on 2/28/2020. This report's first publication date is 3/20/2020.

F. There are also at least three other post-2022 incidents in which Just Wireless chargers have either caught fire or burned, including 9/9/2023 incident involving a Model #04441, 9/20/2023 incident involving a "Just Wireless 4' TPU Type-C to USB-A Cable", and a 10/30/2024 incident involving a "Just Wireless 2.4/12W 1-Port USB-A Wall Charger with 5' TPU Lightning to USB-A Cable".

Based on information and belief, Defendants' internal emails, reports, records, memorandums, or other documentation will also show they had actual or constructive knowledge

of the dangerous condition of these products. Based on information and belief, Defendants' internal product safety department (or the equivalent) has personal knowledge of the dangerous condition of these products. The Defendants repeatedly ignored these safety warnings about these products and failed to act reasonably to mitigate the risks associated with this product.

COUNT I

DEFECTIVE PRODUCT

22. Plaintiffs adopt and incorporate by reference all prior paragraphs of the Complaint as if set out here in full.

23. Defendants are engaged in the business of manufacturing, selling, and distributing electronic cell-phone chargers to the public, including in the manufacturing, selling and distributing the JW Home Charger, which injured T. H.

24. Pursuant to Miss. Code Ann. § 11-1-63, at the time the Subject Charger left the control of the manufacturer, designer, distributer and/or Defendants:

    A.    The Subject Charger was defective because it deviated in a material way from the manufacturer's, designer's, or distributer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, and/or

    B.    The Subject Charger was defective because it failed to contain adequate warnings or instructions, and/or

    C.    The Subject Charger was designed in a defective manner, and/or

    D.    The Subject Charger breached an express warranty or failed to conform to other express factual representations upon which Plaintiffs justifiably relied in electing to use the products; and

    E.    The defective condition rendered the Subject Charger unreasonably dangerous to the user or consumer, including T. H.; and

    F.    The defective and unreasonably dangerous condition of the Subject Charger proximately caused the harms, injuries and damages for which recovery is sought in this Complaint.

25. The harms, injuries and damages Plaintiffs seek to recover compensatory damages for were not caused by any inherent characteristic of the Subject Charger which is a general aspect of the products that cannot be eliminated without substantially compromising the products' usefulness or desirability, and/or which was recognized by the ordinary person with the ordinary knowledge common to the community at the time T. H.'s mother purchased and used the Subject Charger.

26. Defendants failed to: maintain quality control; detect known or knowable risks; and improperly tested the safety of this phone charger. The charger was defective because the charger departed and/or deviated in a material way from the Defendants' specifications and intended use of the charger: to operate in a safe and effective manner, *i.e.*, charge a cell phone without catching fire. The charger failed to function properly and posed a known danger to the Defendants.

27. At the time the Subject Charger left the control of Defendants, Defendants knew or in light of reasonably available knowledge should have known about the danger that caused the harms, injuries and damages to the Plaintiffs for which recovery is sought in this Complaint, and Defendants knew or in light of reasonably available knowledge should have known that the ordinary user or consumer, such as T. H. and his mother, would not realize the Subject Charger's dangerous condition.

28. At the time the Subject Charger was sold and delivered to Plaintiffs, the Subject Charger was defective because they failed to contain adequate warnings or instructions. Defendants did not provide T. H. nor his mother with any warning or instruction that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger posed by the Subject Charger. Defendants did not provide T. H. nor his mother with any product warning or instruction with the Subject Charger that communicated sufficient information

on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product.

29. Defendants knew or should have known that using the Subject Charger in the manner expected and/or intended consumers, including T. H. and his mother, to use that and similar products posed a risk of serious harms and injuries from fires and/or explosions. Defendants further knew or should have known that a simple and inexpensive part such as a protection circuit module, heat-resistant coverings to prevent overheating, an automatic shut-off mechanism, or braided nylon (to prevent fraying or damage), or other safety components would have prevented the Subject Charger from spontaneously overheating and subsequently catching fire, and failed to warn consumers, including T. H. and his mother, of such danger. Plaintiffs further allege that Defendants market the Subject Charger to consumers that lack the mechanical knowledge to be able to appreciate the dangerous condition of the Subject Charger, without reasonable safety components.

30. At the time T. H.'s mother purchased and T. H. used the Subject Charger, neither (i) had knowledge of a condition of the condition of the Subject Charger that were inconsistent with their safety; (ii) appreciated the danger in the condition of the Subject Charger; and/or (iii) deliberately and voluntarily chose to expose themselves to the danger in such a manner to register assent on the continuance of the dangerous condition.

31. At the time T. H.'s mother purchased and T. H. used the Subject Charger, the danger posed by the Subject Charger was not known, and was not open and obvious, to either of them and/or any ordinary and expected consumer or user of the product; and should not have been known or open and obvious to them and/or any ordinary and expected consumer or user of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.

8

32. At the time the Subject Charger left the control of the manufacturer, designer and/or Defendants:

   A. The manufacturer or Just Wireless and/or Best Case knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the harms, injuries and damages for which recovery is sought in this Complaint; and

   B. The Subject Charger failed to function as expected by T. H. and his mother and there existed a feasible design alternative that would have to a reasonable probability prevented the harms, injuries and damages sought in this Complaint; which feasible design alternative would have to a reasonable probability prevented the harms, injuries and damages suffered by the Plaintiffs without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

33. Just Wireless and/or Best Case exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the Subject Charger that caused the harms, injuries and damages for which recovery of damages is sought; and/or Defendants altered or modified the product, and the alteration or modification was a substantial factor in causing the harms, injuries and damages for which recovery of damages is sought; and/or Defendants had actual or constructive knowledge of the defective condition of the Subject Charger at the time it supplied the Subject Charger to T. H. and his mother.

34. Defendants had actual or constructive knowledge of the defective condition of the Subject Charger at the time it placed the Subject Charger into the stream of commerce.

COUNT II

BREACH OF WARRANTY

35. Plaintiffs adopt and incorporate by reference all prior paragraphs of the Complaint as if set out here in full.

36. Pursuant to Mississippi Code § 11-1-63, as amended, the Subject Charger breached an express warranty or failed to conform to other express facts or representations upon which T.

H. and his mother justifiably relied in electing to purchase and use the Subject Charger inasmuch as the Subject Charger failed to perform as warranted and failed to conform with the express factual representation that the Subject Charger was safe to use with the make and model of the cellphone, iPhone SE.

37. Pursuant to Mississippi Code §§ 75-2-314 ("Implied warranty: merchantability; use of trade"), and 11-1-63, Just Wireless and/or Best Case warranted that the Subject Charger was: free of defects; of merchantable quality; fit for the ordinary purpose for which chargers are used; of fair average quality; and was fit for the purposes and manners intended.

38. T. H. and his mother relied upon Just Wireless' and/or Best Case's express and implied warranties.

39. It was reasonable to expect that T. H. and his mother would use and depend upon the safe operation of the Subject Charger.

40. Defendants wantonly and recklessly violated its warranties by designing, manufacturing, supplying, distributing, selling, marketing, and assembling the Subject Charger, which was not merchantable or fit for its intended uses.

## COUNT III

## NEGLIGENCE / GROSS NEGLIGENCE

41. Plaintiffs adopt and incorporate by reference all prior paragraphs of the Complaint as if set out here in full.

42. Defendants were negligent and careless thereby directly and proximately causing bodily injury to T. Howard. The actions of Defendants were grossly negligent with a willful and wanton or reckless disregard for the safety of others so as to justify punitive damages.

43. Defendants had an affirmative duty to remedy the unsafe condition relating to the Subject Charger and/or to warn T. Howard and his mother of the danger related to use of the same in a device such as the Subject Charger.

44. Defendants breached its duty to Plaintiffs in that it designed, manufactured, supplied, distributed, sold, marketed, and assembled the Subject Charger.

45. Defendants breach of its duty to T. Howard and his mother was the proximate cause of Plaintiffs' harms, damages and injuries that are the subject of this litigation.

## VICARIOUS LIABILITY

46. Upon information and belief, and at all times herein mentioned, Defendants are vicariously liable for the negligent, careless, reckless, and/or grossly negligent acts and/or omissions of their employees, representatives, and agents.

## ACTUAL AND CONSEQUENTIAL DAMAGES

47. Plaintiffs adopt and incorporate by reference all prior paragraphs of the Complaint as if set out here in full.

48. Plaintiffs would show that as a direct and proximate result of the acts and omissions of the Defendants, as previously set forth, Plaintiffs sustained the following harms, injuries and damages:

    A. Severe and permanent injuries resulting in pain and suffering to T. H.;

    B. Permanent impairment of T. H.;

    C. Mental anguish and severe emotional distress for T. H., R. B., and their mother, Maria;

    D. Loss of the enjoyment of life;

    E. Lost earnings and lost earning capacity for Maria Ortiz Burch during her child's recovery from this injury;

    F.      Expense of medical care and treatment, future medical care and treatment, hospital care, doctors' care, medicine and drugs for treatment of T. H.'s injuries, and other out of pocket expenses. Plaintiffs reserve the right to submit the total amount of medical bills at trial;

    G.      Physical property damage; and

    H.      Other harms and damages to be shown at trial.

49.    Plaintiffs also seek reasonable attorneys' fees and costs of this litigation, all of which were foreseeably incurred by the Plaintiffs as a direct and proximate result of Defendants' acts and omissions set forth above.

50.    Plaintiffs are also entitled to, and pray for pre-judgment interest on all of Plaintiffs' liquidated damages; as well as post judgment interest, in the amount of 10% per anum or such other amount to be set by the Court.

51.    Plaintiffs pray for an award of all other damages deemed appropriate by this Honorable Court.

## PUNITIVE DAMAGES

52.    Plaintiffs adopt and incorporate by reference all prior paragraphs of the Complaint as if set out here in full.

53.    Plaintiffs would show unto the Court each of Defendants' acts and omissions amount to gross negligence and/or reckless disregard for the safety of the Plaintiffs, such that punitive damages should be assessed against Defendants. Specifically, Defendants continued to knowingly sell a dangerous product.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgments against all Defendants, jointly and severally, on each of the above-referenced claims and Causes of Action as follows:

    A.      Awarding actual damages in an amount to be proven at a trial in this cause,

together with interest and all costs incurred herein;

B. Awarding compensatory damages to for past and future damages, including but not limited to: pain and suffering for severe and permanent personal injuries sustained by Plaintiffs, including permanent disfigurement; disability; health care costs; medical monitoring; together with interest and costs as provided by law;

C. Awarding punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts of Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of Plaintiffs and of the general public, and to Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

D. Awarding injunctive relief requiring Defendants to issue an adequate warning and/or preventing Defendants from selling their products in the state of Mississippi;

E. Awarding prejudgment interest in an amount not less than 10% per anum;

F. Awarding post judgment interest in an amount not less than 10% anum;

G. Awarding Plaintiffs' attorneys' fees;

H. Awarding Plaintiffs the costs of these proceedings; and

I. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

*(intentionally left blank)*

Respectfully submitted, this the 15th day of July, 2025.

                                          T. H. and R. B., MINORS, by and through their mother and next of kin, MARIA ORTIZ BURCH and MARIA ORTIZ BURCH, in her individual capacity

By: _____
Sterling Overton Eaves (MSBN 106642)
Christopher Brady Eaves (MSBN 106474)
101 North State Street
Jackson, Mississippi 39201
Telephone: (601) 355-7961
Facsimile: (601) 355-0530
sterling@eaveslawmail.com
*Attorney for Plaintiffs*

14